IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

John Doe,                                                C.A. No. _____

                Plaintiff,

                                                     **COMPLAINT**
      vs.                      **(Declaratory Judgment & Jury Trial**
                                            **Demanded)**

Coastal Carolina University,

                Defendant.

Plaintiff John Doe, through undersigned counsel Clarence Davis of Griffin Davis LLC and for his Complaint, respectfully alleges as follows:

## THE PARTIES

1.      Plaintiff John Doe (hereinafter "Plaintiff" or "John Doe") is a natural person with a permanent residence in or around Anderson, South Carolina.  During the events described herein, John Doe was a freshman student at Coastal Carolina University, residing off-campus in or around the city of Conway in Horry County, South Carolina.

2.      Defendant Carolina Coastal University (hereinafter "Coastal") is a public, South Carolina state supported liberal arts university located at 100 Chanticlear Drive East in the city of Conway in Horry County, South Carolina.

## JURISDICTION AND VENUE

3.      This matter is properly before this Court because it involves issues of federal question relating to Title IX of the Education Amendments of 1972, 20 U.S.C. Sections 1681 through 1688 anti-discrimination laws and their application to due process rights violations during Coastal's investigating and adjudicating a sexual assault allegation against Plaintiff John Doe.  The

allegation relate to an intimate relationship with a female student, who for privacy purposes will be referred to as Jane Doe.

4.      This Court has federal question jurisdiction, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and under 28 U.S.C. § 1332 because: (a) John Doe's primary claims are federal questions; and (b) the state law claims are closely related, thereby forming the same "case or controversy" under Article III of the U.S. Constitution.

5.      This Court has personal jurisdiction over Defendant Coastal because it conducts business primarily within the State of South Carolina.

6.      Venue properly lies in the District of South Carolina's Florence Division pursuant to 28 U.S.C. §1391, because all or a substantial part of the events or omissions giving rise to the action occurred in this judicial district and its division, specifically in or around the city of Conway in Horry County, South Carolina.

## THE NATURE OF THIS ACTION AND PROCEDURAL HISTORY

7.      Plaintiff John Doe seeks redress against Defendant Coastal due to the actions, omissions, errors, flawed procedures, negligence and/or gross negligence and overall bad faith failure to provide John Doe a meaningful standard of due process and equity, concerning the purported sexual assault allegation of rape made against John Doe.

8.      Plaintiff John Doe, at the time of the events subject to this Complaint, had been a male freshman student at Defendant Coastal in good standing, who earned a position on the football team after a solid performance during Spring 2016 practice.

9.      The allegation was made by a fellow female Coastal student, Jane Doe, a varsity cheerleading squad member[1], after an evening of consensual sexual intercourse following Jane Doe and John Doe meeting at a daytime late afternoon off-campus pool party.

10.      Plaintiff John Doe and Jane Doe previously had engaged in consensual sexual intercourse at least two to three times, if not more—to include a rendezvous at accuser Jane Doe's invitation in her familial home located in or around the Conway, South Carolina area and in Defendant John Doe's dorm room-- prior to the evening in question.

11.      After a diligent in-depth investigation, the city of Conway Police Department made the informed decision not to pursue Jane Doe's report of non-consensual sexual intercourse, as against John Doe. (Exhibits 1A and 1B)

12.      The Pool Party, was not a Coastal off-campus educational program or activity.

13.      The consensual sexual intercourse between John Doe and Jane Doe at an off-campus apartment complex after the Pool Party did not occur within the context of a Coastal off-campus educational program or activity.

14.      However, despite the fact that Jane Doe's allegation involves conduct that did not occur on Coastal property or during an off-campus educational program or activity, Coastal convened a Student Conduct Board to determine if John Doe should be charged with violations of Coastal's Code of Student Conduct ("Student Code") for the alleged rape of Jane Doe. (Exhibit 2).

---

[1] From March through May 2017, there was a probe into the Coastal Carolina cheerleaders centered on allegations of prostitution, drug use and underage drinking. It was confirmed that some Coastal Carolina University cheerleaders worked for an escort service. The escort service had been established through a website that facilitates relationships between "sugar daddies and mommies," who are wealthier and typically older, and "sugar babies", younger men and women who often receive money and gifts in exchange for their companionship. The head cheerleading coach was fired and the entire cheerleading squad suspended.

15.     A Student Conduct Board was formed to adjudicate the allegation based on the investigative report of the assigned Title IX investigator for the university—then Coastal's Vice President of Student Rights & Responsibilities and Dean of Students Travis E. Overton. (*id*.)

16.     On or about November 29, 2016, the Student Conduct Board notified John Doe and Jane Doe of a date and time for it to hear evidence surrounding the sexual misconduct allegation asserted by Jane Doe. (*id*.)

17.     The Student Conduct Board was comprised of Coastal faculty, specifically five faculty members (two male and two females), in addition to a male Student Conduct Board Chairperson.

18.     The Chairperson had been designated to preside over the hearing and in consultation with Coastal Legal Department staff attorneys, decide upon any procedural and evidentiary issues arising prior to and during the Student Conduct Board hearing, as well as deliberations.  A decision by the Student Conduct Board as to whether the sexual assault allegation constitutes a student conduct violation must be a majority decision, with the Chairperson having no voting power (except to break a tie vote by the Board for a decision).  (See Exhibit 3)

19.     On Tuesday, December 6, 2016, the Student Conduct Board adjudicated the rape allegation for four hours, hearing testimony from three witnesses, including Jane Doe and John Doe, and reviewed documents.  The General Counsel for Coastal, who heads a two lawyer Legal Department and is its most experienced staff attorney, had been present at all times during the Board proceeding and deliberations to provide legal advice and guidance to its five members.

20.     After deliberating approximately two hours and by unanimous decision, the Student Conduct Board found in favor of John Doe, determining there was insufficient evidence to support

the sexual misconduct allegation of rape against him. The decision had been orally announced to both Jane Doe and John Doe on Tuesday, December 6, 2016 [2], in the presence of Coastal Legal Counsel and a representative of its Office of the Dean of Students, with a written opinion issued on December 7, 2016 by email. (Exhibit 4)

21.    Pursuant to the Student Conduct Handbook, only one appeal can be taken from the hearing, be it by Jane Doe or John Doe.

22.    The Student Conduct Handbook also requires, "The student must submit the appeal in writing …. The appeal must be submitted three business days of the decision." (Exhibit 3, Section IV(G)(2)).[3]    Accordingly, the deadline to submit a written appeal had been Friday, December 9, 2016.

23.    Upon information and belief, Jane Doe did not submit a written appeal of the decision until December 15, 2016 and thus, missed the filing deadline for an appeal by seven business days. (See Exhibit 5)  On this basis alone, no appeal by Jane Doe should have been considered by Coastal and instead, summarily rejected because by missing the appeal deadline, the Student Conduct Board decision was final.

24.    The appeal was also defective on its face, thus, giving Coastal an additional reason to summarily reject the appeal.

---

[2] The unanimous Student Conduct Board decision in favor of Plaintiff John Doe was reduced to writing on December 7, 2016, and upon information and belief, essentially the same notification sent to Jane Doe also by email.
[3] The written decision states:  "… *you will need to submit the COMPLETED "Student Conduct Request for Appeal" with the written narrative (and any additional documentation) by December 12, 2016 to the Dean of Students Office... .* "  This is in error because Coastal's Student Conduct Request for Appeal states: "… You will need to submit this COMPLETED form … by three (3) business [days] following the decision to the Dean of Students Office.  In this instance, the Dean of Students Office through Dean of Students Travis Overton was represented at the hearing, putting it on notice of the decision as of December 6, 2016.

25.     According to the Code of Student Conduct, Jane Doe was required to specifically state the error(s) which took place at the Student Conduct Board hearing.  (Exhibit 3, Section IV(G)(1)).

26.     Jane Doe's appeal does not identify any specific (or general) procedural or evidentiary error(s) that occurred during the hearing or in deliberations.  Further, and also required by the Code of Student Conduct, the appeal identified no new or additional evidence that should have or could have been considered by the Student Conduct Board.[4] (id.)

27.     Despite Jane Doe missing the mandatory deadline to submit an appeal and it being deficient on its face, the appeal was considered by Defendant Coastal and granted, reading verbatim as follows:

> "[Jane Doe],
>
> I have reviewed the appeal of the decision of the student conduct board. This review included the information provided to the Board, a Review of the proceedings of the Board, the incident report, the investigation notice, the Title IX Report, the Pre-Hearing Conference Report, and the Dismissal Letter. All of these reviews were considered relative to the Code of Student Conduct and the procedures outlined within.
>
> The basis for appeal is stated in the Student Conduct as '1) whether University disciplinary procedures were followed that provided notice of the charges and an opportunity to respond and/or 2) whether new information exists sufficient enough to alter the original decision and why

---

[4] Without explanation, Coastal refuses to provide John Doe and his counsel a copy of Jane Doe's appeal letter.  As such, it cannot be attached to this Complaint.  However, Coastal did allow counsel to review the correspondence. John Doe also reviewed the appeal letter.  Based on his recollection, John Does does not recall it delineating specific errors as required by the Student Code.

such information was not available or not presented at the original hearing.
In accordance with Title IX, the accuser has the opportunity to submit an
appeal in Title IX cases'

Based on review, I have requested a new hearing by the Student Conduct
Board on Case 2016179901

J. Ralph Byington, Ph. D.

Provost and Executive Vice President.

cc: Travis Overton"

(Exhibit 6)

28.     Coastal's Provost and Executive Vice President acknowledged reviewing in detail
the entire Student Conduct Board record of December 6, 2016, but cites no procedural or
evidentiary error of any kind to justify considering or granting the appeal.  Further, there is not a
single iota of new information identified in existence or available which would or could have
altered the December 6, 2016 Student Conduct Board decision.

29.     In erroneously considering and then granting an appeal, Provost Byington,
unlawfully ordered a second Student Board of Conduct be constituted to adjudicate the sexual
misconduct allegation against John Doe at a rehearing.  Provost Byington simply did not like the
decision of the original December 6, 2016 Student Conduct Board finding in unanimous favor of
John Doe that he did not engage in non-consensual sexual intercourse with Jane Doe.

30.     The decision by Provost Byington cited provisions of the Code of Student Conduct
and states only, "that the accuser has an opportunity to submit an appeal in Title IX cases."  That's
it, nothing else!  As a result, Provost Byington ordering a rehearing of the original Student Conduct
Board is a decision supported by neither substantial nor even a scintilla of evidence, making it not

only a capricious and arbitrary decision, but so grossly erroneous that it constitutes a willful and wanton act of bad faith, with an anti-male gender bias.

31.     The capricious and arbitrary decision by Provost Byington did not even require or order a duly constituted Student Conduct Board as required by the Code of Student Conduct.  It is required that, "A sitting panel … will consist of **two students** (emphasis added) and four of the faculty/staff members."  (Exhibit 3, Section IV (E)(1)(b))  The new panel was comprised only of a Chairperson and three faculty members, with not a single student member appointed, as required, further evidencing the Provost acted willfully and wanton and in bad faith, with an anti-male gender bias.

32.     The unlawful rehearing of the December 6, 2016 Student Conduct Board with an unduly constituted and incomplete board panel was conducted on March 31, 2017 in only two hours, hearing no witnesses and deliberated only twenty-five minutes.  Following deliberations the unlawful second Student Conduct Board ruled that, "The board found a preponderance of evidence to indicate that student [Jane Doe] was incapacitated by alcohol consumption, based on the statements provided. [John Doe] was familiar with [Jane Doe] from previous interactions and therefore reasonably should have known that [Jane Doe] was incapacitated and therefore unable to give consent." (Exhibit 7)

33.     This decision was arbitrary and capricious for several reasons:  1) As described in the above paragraphs, the second Student Conduct Hearing should have never taken place; 2) This finding is in stark contrast to evidence presented at both the original hearing and the rehearing that a blood alcohol test had been administered indicating a level of only .07, which does not evidence alcoholic incapacity.  ( Exhibit 8)[5]; and 3) There had never been presented a single iota of evidence

---

[5] Pursuant to South Carolina Code, Title 56, Chapter 5, Section 2950(6)(2), when driving a motor vehicle the law does not give rise to any inference that the person was incapacitated or under the influence of alcohol unless a blood

at neither the original nor the second Student Conduct Hearing— no witness testimony, no documents, no photos, no recordings (audio or visual)-- that John Doe had ever been around or observed Jane Doe when incapacitated by alcohol or any other substance; 3) And as previously stated, the second Student Conduct Board was not duly constituted, in that it did not have the required two student representatives mandated by the Student Code, making it an unlawful decision.

34.    The second unduly constituted Student Conduct Board and its arbitrary and capricious findings "stopped dead in its tracks" John Doe's education and varsity college football career, resulting in the loss of a full tuition athletic football scholarship for the 2017 through 2020 Coastal football seasons and academic years.  He was permanently expelled from Coastal.

35.    John Doe, as a result of the permanent expulsion, has been unable to complete his studies at Coastal, with whatever monies spent on obtaining a college education at Coastal and the value of a full tuition athletic football scholarship-- squandered.

36.    In transferring to an equivalent university, substantial academic credits could not be transferred and were thereby lost.

37.    In transferring to an equivalent university, full-tuition costs have been incurred, over and above the tuition cost for a collegiate education at Coastal, particularly with the loss of the full tuition athletic football scholarship.

38.    Efforts to transfer to a NCAA Division I college football program, either as a walk-on or in seeking another full-tuition (or even part-tuition) athletic scholarship have presently been lost by the negative impact of John Doe's permanent expulsion from Coastal for the unsubstantiated accusation by Jane Doe of rape.

---

alcohol content of .10.  At the level of .07, this law does not give rise to any inference that the person was or was not under the influence of alcohol.

39.    John Doe's emotional health has been greatly compromised by the entire ordeal.[6]

40.    Based on the foregoing and allegations set forth below, John Doe brings this action to obtain relief based on causes of action for, among other things, violations of both Title IX of the Education Amendments of 1972 and various state laws.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I. Agreements, Representations, Covenants and Warranties Between John Doe and Defendant Coastal

41.    Plaintiff John Doe is a South Carolina native who worked diligently in high school, furthering his education at Fork Union Military Academy.   He graduated with high honors, while a star athlete and Team Captain of Fork Union's varsity football team. John Doe completed the SAT standardized college entrance examination with competitive scores.  Coastal was just one of the universities where John Doe applied to attain a college education.

42.    He earned walk-on opportunities to earn a full tuition paid football athletic scholarship to both the University of North Carolina at Chapel Hill and Coastal. Ultimately, John Doe made an informed decision to attend Coastal as a freshman, entering its Spring class of 2016.

43.    Upon acceptance and attendance registration, Coastal provided John Doe with copies of its school policies and/or online student access, including the Code of Student Conduct for the year 2016 through 2017, which included its Sexual Misconduct policy and procedures.

44.    Coastal's Code of Student Conduct states in relevant part: "Members of the Coastal Carolina University Community, guests, and visitors have the right to be free from all forms of gender and sex-based discrimination, examples of which include sexual violence sexual harassment, domestic violence, dating violence, and stalking.    All members of the campus

---

[6] Fearing possible stigma, Plaintiff John Doe has not sought professional therapeutic counseling.

community are expected to conduct themselves in a manner that does not infringe upon the rights of others." It requires student participation in this process and the related student conduct process, setting forth the rights of the accused, with a non-male gender biased fair process being accorded in relation to the right to a pre-adjudication investigation, Student Conduct Board hearing and a consideration of whether and appeal may be warranted.

45.    Pursuant to Coastal's Code of Student Conduct when an allegation arise, an Investigator is assigned by the school, in this matter Vice President of Student Rights and Responsibilities and its Dean of Students Travis E. Overton (hereinafter "Dean Overton"). In accord with the Student Conduct Handbook, any Investigator assigned by Coastal in determining responsibility for charges of sexual misconduct shall have received appropriate training and must maintain complete impartiality during the course of any investigation.

46.    Also in accord with the Code of Student Conduct, any faculty member serving as a member of a Student Conduct Board to determine charges of sexual misconduct responsibility shall have received appropriate training and must maintain complete impartiality prior to and during any hearing.

**II. Jane Doe Meets John Doe At An Off-Campus Apartment Complex Pool Party**

47.    Both accuser Jane Doe and Plaintiff John Doe attended a pool party at an off-campus apartment complex near Coastal on the afternoon of Saturday, August 27, 2016. Both John Doe and Jane Doe had drank small quantities of alcoholic beverages at the party; however, neither of them had been drunk or intoxicated.

48.    After flirting back and forth throughout the afternoon at the pool party, John Doe and Jane Doe intimated to each other that they should go to Jane Doe's nearby apartment and again engage in consensual sexual intercourse.

11

49.     While sitting at the pool's edge and when Jane Doe was flirting with John Doe, he asked, "Do you want to go back to your room and [have sex]?"   Without hesitation or thought, Jane Doe responded affirmatively, while also expressing she could not be seen leaving the pool party with John Doe since she had a steady boyfriend.  Jane Doe and John Doe agreed to meet near an exit gate of the apartment complex pool party and proceed together to Jane Doe's nearby apartment.

50.     As agreed, Jane Doe and John Doe met near an exit gate of the apartment and then, left the party with them walking together to Jane Doe's nearby apartment.  During the walk to Jane Doe's apartment, video footage from several security cameras at different vantage points of the surrounding apartment complex buildings show she playfully, flirtatiously and physically mounted and rode on the back of John Doe on several different occasions, as they proceeded to her apartment.

51.     After walking up four flights of apartment complex stairs, when Jane Doe and John Doe arrived outside of Jane Doe's apartment, she discovered it locked.  Jane Doe did not have a key on her person to gain entry.  Jane Doe lived in an apartment with three female roommates, and by happenstance one of them was nearby in the hallway.  There is hallway security camera video footage of accuser Jane Doe and John Doe arriving at the apartment and then, accuser Jane Doe asking to use the roommate's key to allow both she and John Doe entrance into the apartment.

52.     Once inside the apartment, Jane Doe and John Doe entered her bedroom and began kissing which led to sexual activity. Following Jane Doe and John Doe engaged in sexual intercourse, with Jane Doe instigating various sexual positions, starting by pulling down her bottoms and voluntarily bending over onto the edge of the bed to encourage and allow penal entry of her vagina from the rear.  Jane Doe even commented on the size of John Doe's genitalia as he

12

penetrated her during one of the many positions she instigated during intercourse. Shortly after consensual sexual intercourse, Jane Doe fell asleep on the bed.

53.       During or following the above described consensual sexual activity, the roommate, who allowed Jane Doe and John Doe entry with her key, was physically present in the apartment. While Jane Doe was sleeping, post sexual activity, John Doe came out of the room and into the kitchen to get something to quench his thirst. While in the kitchen, he engaged in conversation for a few minutes with Jane Doe's roommate. Jane Doe remained asleep in her room.

54.       At all times, Jane Doe had been free to leave her apartment bedroom room or apartment, since John Doe walked in and out of the bedroom during the evening and one of her roommates had been present in the apartment at least part of the time John Doe was there.

55.       John Doe did not spend the night at the apartment. While Jane Doe remained asleep, John Doe returned to Jane Doe's bedroom, dressed and departed the apartment. He even engaged in conversation right outside the apartment door with an acquaintance, also reflected on hallway security camera video footage.

56.        At all times, Jane Doe's cellular phone had been on the nightstand, readily available for her to make phone calls if she had needed help. There was never a call for help. As evidenced by phone records and corroborated by Jane Doe's oral admission at the original December 6, 2016, the only phone call made had been to John Doe, once she awakened to find he had departed. (Exhibit 9)

**III. Jane Doe Files False Rape Allegation Against John Doe**

57.       On or about August 27, 2016, the City of Conway Police Department responded to a complaint filed by Jane Doe, who notified them of a potential "sexual assault" with respect to the events previously discussed. The complaint named John Doe, as well as another male Coastal

student who had been present in the apartment following the consensual sexual encounter between Jane Doe and John Doe.[7]

58.     City of Conway Police Department Officers Bobbit, Long and Strickland interviewed Jane Doe, noting, upon information and belief, that Jane Doe's behavior was unusual that she was very casual, unconcerned about the incident involving John Doe.  Instead, she appeared far more concerned about another male Coastal student who had been present in the apartment following her rendezvous with John Doe and while she had been asleep.

59.      Jane Doe described how she met John Doe at the pool party and that she accompanied him to her apartment after leaving the party. However, Jane Doe's description of the events that followed diverged dramatically from what actually occurred.  She mentioned she was dragged in the parking lot area and near the stairs. The officers reviewed security camera video footage, determining that was a lie.

60.     Jane Doe even claimed when at her apartment, she had an inability to remember much about that evening. To the contrary, John Doe and Jane Doe joked about having sex, and after entering her apartment bedroom, she made the first move by removing her bottoms, following and then turning her rear towards him to be penetrated sexually.

61.     During the interview with the city of Conway police, Jane Doe stated she felt compelled to make the report because the cheerleading coach urged her to do so.

62.     On October 14, 2016, the city of Conway Police Department's Dale Long contacted John Doe's father, notifying him that the investigation was complete; that there was no evidence to support a sexual assault claim against his son John Doe; that the city of Conway Police

---

[7] The other male Coastal student had a Student Conduct Board hearing on the same day as John Doe and by the same members.  It resulted in an unfavorable decision on the sexual assault allegation of rape against the other male Coastal student. Further, there still remains open an active criminal investigation of this student by the city of Conway Police Department.

Department would not be investigating John Doe any further; and, that the case concerning John Doe would be "closed."

**IV. Coastal's Mishandling of Jane Doe's Complaint**

63.    Officer Long also informed Coastal that the city of Conway's Police Department findings and ultimate decision warranted closing the case against John Doe.

64.    No matter, on or about October 14, 2016, John Doe was notified by Coastal that he was being formally charged with violation of the Student Conduct Handbook for the evening rendezvous between him and Jane Doe.

65.    As Investigator for Coastal, however, Dean Overton was not an independent fact-finder or disinterested party because he had engaged in odd faculty-student conduct towards John Doe, as follows:

    a.    From January 2016 through July 2016, Dean Overton would oddly have weekly "mentoring" meetings with John Doe in his office.

    b.    During the course of these so-called "mentoring" meetings and over the protests of both John Doe and his father, Dean Overton oddly purchased a dress suit for John Doe for approximately $300.00 or more as a gift, followed by taking John Doe to dinner.

    c.    On or about July 1, 2006, John Doe was in an off-campus auto accident in the Myrtle Beach, South Carolina area, which was, upon information and belief, approximately more than 20 miles from Coastal's campus.  Oddly, Dean Overton took primary/parental care of John Doe during his Emergency Room treatment, insisting John Doe's father was not needed and instead, he "…would handle everything…," including communication and coordination with treating physicians

at the Grand Strand Regional Medical Center located in Myrtle Beach, South Carolina.

66.    Combined, the odd actions of Dean Overton can be inferred as possible inappropriate conduct towards a student. If so and spurned by John Doe, it can generate an anti-male gender bias by the Investigator towards John Doe.

67.    On or about Sept 27, 2016, this disturbing faculty-student conduct and possible resulting bias was brought to the attention of Dean Overton as the Investigator by the father of John Doe, which was ignored.

68.    Upon information and belief, the Investigator never brought this conduct or the father's concern to the attention of neither the Coastal Legal Department nor other Coastal officials. And if the Investigator did so, then either the Coastal Legal Department or other Coastal officials ignored the bias created by this potential faculty-student predatory conduct.

69.    Further, Dean Overton, upon information and belief, had no specialized training in the investigation and administrative prosecution of a nonconsensual sex or sexual assault allegation. As an Investigator, Dean Overton showed an ineptitude and/or demonstrated an anti-male gender bias against John Doe in the following manner:

a.    Dean Overton as Investigator, when questioning John Doe throughout the process, his line of questioning was hostile in nature, more akin to cross-examination in tenor to illicit a confession, rather than an objective attempt to factually reconstruct an event;

b.    Dean Overton as Investigator did not interview the Cheerleading Coach to determine if any truth to accusations she may have coerced, convinced or persuaded Jane Doe to wrongly accuse John Doe of engaging in nonconsensual sex;

c.    Dean Overton as Investigator did not interview the Cheerleading Coach against a backdrop of accusations that she threatened members of the cheerleading squad to support the story of Jane Doe.  This is despite members of the squad who knew Jane Doe well and seriously questioned her character for veracity and were aware of the prior intimate casual sexual relationship between Jane Doe and John Doe.  Accusations were, upon information and belief, that if any of the cheerleading squad came forward with this type or other information which could exonerate John Doe, then it could result in dismissal from the cheerleading squad.

d.    Dean Overton as Investigator, upon information and belief, often mischaracterized the interview statements of several witnesses over their protest to him.  Upon information and belief, Dean Overton was even asked by Dale Long of the Conway police Dept. to "stand down".  Because, Dean Overton's overly aggressive tactics were interfering with the police investigation;

e.    Dean Overton as Investigator had been provided the names of several potential witnesses who knew of evidence in exoneration of John Doe.  Specifically, John Doe provided the identities of three witnesses present at the off campus pool party.  These witnesses had observed Jane Doe's interactions with John Doe, providing corroborating evidence of subjective and objective consent.  Several of these witness also had information regarding Jane Doe's reputation for promiscuity.  Despite having approximately one hundred days to conduct the investigation, the Investigator either refused to or did not interview these witnesses, with the effect of receiving Jane Doe's false allegation of rape at face value.;

      f.     Dean Overton as Investigator, upon information and belief, discouraged witnesses favoring John Doe to attend the Student Conduct Hearing to either vouch for his character or provide testimony that Jane Doe seriously lacked a character for veracity or could provide other evidence inconsistent with her having been sexually assaulted by John Doe; and

      g.     Several of the above referenced witnesses testified at the first Student Conduct Hearing.  Following the granting of the appeal of Jane Doe for a rehearing of the Student Conduct Board, these witnesses should have also been subsequently interviewed by the Investigator and invited to the testify at the rehearing held on March 31, 2017.

70.     Credibility and character of the accuser is critical when the accused is faced with a charge that amounts to nothing more than "he said, she said", as reflected by the finding in favor of John Doe at the first Student Conduct Board hearing.  Character and credibility witnesses, many of them varsity football players who observed Jane Doe and John Doe interact at the off campus party and who personally know Jane Doe, testified at the first Student Conduct Hearing.  They were unavailable at rehearing, however, because of a mandatory varsity football trip at the same time when the rehearing was scheduled and conducted.  Upon information and belief, because of the anti-male gender bias against John Doe, Coastal was dismissive of the credibility and character evidence presented at the first Student Conduct Board hearing.  As a result, it granted an appeal and then authorized a rehearing without this evidence by scheduling it on a date when Coastal knew or should have known these credibility and character witnesses were unavailable.  This is arbitrary and capricious, as well as willful and wanton bad faith conduct by Coastal.

71.     This is arbitrary and capricious, as well as willful and wanton bad faith conduct by Coastal because prior to the original Student Conduct Hearing, it was revealed that Jane Doe had lied several times to Coastal and the police when she first made her report of non-consensual sexual intercourse, including, without limitation:  Being dragged and abused by John Doe, completely disclaimed by testimony and security camera video footage.

72.     This particular failure also flies in the face of and, upon information and belief, explains Coastal's decision not to make scheduling accommodations for John Doe's undersigned new attorney by continuing the rehearing.  (Exhibit 10)  To have done so would have allowed the attendance of credibility and character witnesses against Jane Doe.

73.     Finally throughout this process, there has been other disparate favorable treatment of Jane Doe, demonstrating an anti-male gender bias.

        a.     At the inception of this matter, on September 27, 2016 both Jane Doe and John Doe received an Investigation Notice, agreeing that, "Strict confidentiality of this investigation and content of our communication is expected.  The investigation and provided statements should not be communicated with any individuals outside of the investigation process.  … If a breach of confidentiality comes to your attention –for example, if individuals are witnessed discussing the investigation— please inform our office immediately."  (Exhibit 11) Upon information and belief, Jane Doe took a photograph of confidential statements from witnesses with her cell phone during a meeting with Dean Overton the Investigator, showing them to several students around Coastal's campus.  Upon information and belief, this was reported to the Dean of Students Office, but no disciplinary action taken against Jane Doe.

b.    The Investigation Notice also states that, "Retaliation against anyone involved in the investigation is strictly prohibited.   If you believe there to be mistreatment or retaliation against yourself because of participation in this investigation, please inform the Dean of Students Office immediately."   (id.) Following the granting of the appeal Jane Doe contacted NewSpring Church of Anderson, South Carolina by telephone, informing it that John Doe had been involved in a sexual assault.  As a result of this phone call, John Doe was informed that he could no longer volunteer at the Church, nor work in any environments involving children there.  John Doe was also informed that he could no longer be employed with NewSpring Church's summer after school programs.  This was reported to the Dean of Students Office, but upon information and belief, no disciplinary action taken against Jane Doe.

74.    Upon information and belief, Coastal allowed Jane Doe to escape scrutiny for admitted underage drinking during the evening in question and punishment under its policies and provided Jane Doe with favorable treatment throughout the conduct process on the basis of her gender.

**V. Sanctions Are Disproportionately Severe**

75.    John Doe's permanent expulsion sanction was unwarranted and disproportionate in light of the fact that:

(i)    John Doe had no prior disciplinary record, neither from high school nor while a student at Coastal;

(ii)    John Doe had been a student athlete with grades exceeding a *3.4* GPA, despite the allegation and resultant initial Student Conduct Board Hearing pending against him;

(iii)    John Doe presented exculpatory evidence between himself and Jane Doe, witnesses to testify to objective and subjective consent and her reputation for a lack of veracity before the initial Student Conduct Board;

(iv)    John Doe had an initial favorable decision by a Student Conduct Board, which had Coastal's Chief Legal Counsel present and available to the Board and its Chair throughout the preceding and during deliberations.

(v)    Notwithstanding exculpatory evidence, to include a prior Student Conduct Hearing finding in favor of John Doe, Coastal proceeded to an unlawful finding of John Doe being responsible for the sexual misconduct of rape, meting out a disproportionate punishment of permanent expulsion.

(iv)    Upon information and belief, there are no reported precedents in which a student has been found responsible for a similar charge when having undergone a Student Conduct Board with a favorable finding and then, receiving such a harsh penalty based on an unlawful rehearing, when no procedural rule had been identified as being violated and no new evidence was in existence to warrant appeal.

76.    Based on the foregoing, John Doe's disciplinary record is irrevocably and irreversibly tarnished, as well as the present collegiate academic, athletic career and acceptance into graduate studies programs completely compromised, thereby jeopardizing future career prospects and economic success.

## FOR A FIRST CAUSE OF ACTION
### (Violation of Title IX of the Education Amendments of 1972)

77.    John Doe repeats and realleges each and every allegation above, as if fully set forth herein.

78.    Title IX of the Education Amendments of 1972 provides, in relevant part, that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied

the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

79.    Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports.

80.    Upon information and belief, Coastal receives tens of millions of dollars in federal funding for research and development, as well as student financial aid.

81.    Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice).  Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape.[8]

82.    The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord[] due process to both parties involved... ."[9]

83.    The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

> •    "Notice . . . of the procedure, including where complaints may be filed";
> •    "Application of the procedure to complaints alleging [sexual] harassment...";

---

[8] See generally U.S. Dep't of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX (2001) at 19-20, 21 & nn.98-101.
[9] *Id.* at 22.

- "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

- "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

- "Notice to the parties of the outcome of the complaint..."[10]

84.    A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes alleged sexual assaults."[11]

85.    Based on the foregoing, Coastal has deprived John Doe, on the basis of his sex, rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of Coastal's guidelines and regulations.

86.    Based on the foregoing, Coastal shut John Doe out of the Coastal's community by holding a second and unlawful rehearing when no new evidence existed to warrant it, resulting in Coastal treating him as "guilty."

87.    And it did so, without conducting a full and fair investigation to corroborate Jane Doe's false charge, even prior to the first Student Conduct Hearing, no matter it finding John Doe innocent.  And at the second unlawful hearing, John Doe did not have an adequate opportunity to contest the specific allegation, as it had done so in the first hearing, which found in his favor.

88.    Coastal conducted its investigation of Jane Doe's allegation in a manner that was biased against the male being accused. Based on Coastal investigators' questions and treatment of John Doe, the investigation was slanted in favor of Jane Doe and took her statements at face-value, while mischaracterizing or disbelieving John Doe's statements, despite a first hearing finding in his favor that he was innocent of the charge of sexual misconduct by rape.

---

[10] *Id*. at 20.
[11] *Id*. at 21.

89.    Throughout the student conduct process, Coastal officials treated John Doe as "guilty before proven innocent" and when a hearing found in his favor, continued by conducting a second hearing for no lawful reason.  It was conducted for the sole purpose of undoing the results of the first Student Conduct Hearing.

90.    By unlawfully conducting a second Student Conduct Hearing, Coastal effectively placed the entire burden on John Doe to prove his innocence, instead of setting forth competent evidence to demonstrate how John Doe allegedly engaged in non-consensual sex with Jane Doe.

91.    Coastal's failure to interview critical witnesses during the investigation and on its own accord, present them at the second unlawful hearing in support of John Doe's defense, demonstrates Coastal's favorable treatment of Jane Doe on the basis of her gender.

92.    Coastal has created an environment in which an accused male student is effectively denied fundamental due process by being prosecuted through the conduct process under the cloud of a presumption of guilt. Such a one-sided process deprived John Doe, as a male student, of educational opportunities at Coastal on the basis of his sex.

93.    Coastal failed and/or refused to follow its own policies and procedures for John Doe as the male accused of sexual assault when it found John Doe responsible for sexual assault in the face of its prior decision which found in his favor; its failure to interview additional witnesses in support of John Doe's defense; and failure to present any evidence at the unlawful second Student Conduct Hearing in support of the claim that Jane Doe allegedly engaged in non-consensual sex with John Doe, except for Jane Doe's say-so.

94.    Coastal's policies effectuate a denial of due process for the student population, especially the male student population, in their current state because they are set up to encourage

and facilitate the reporting of false reports of sexual misconduct and/or other grievances without any recourse for the falsely accused.

95.    Based on the foregoing, Coastal imposed sanctions on John Doe that were disproportionate to the severity of the charges levied against him and without any consideration of his clean disciplinary record at Coastal, and without providing any written justifiable summary for the basis therefor, other than he should have known Jane Doe was incapacitated, no evidence existed of him ever seeing Jane Doe in that condition.

96.    Based on the foregoing, upon information and belief, Coastal's guidelines and regulations disproportionately affect the male student population of the Coastal community as a result of the higher incidence of female complainants of sexual misconduct against male complainants of sexual misconduct.

97.    Based on the foregoing, upon information and belief, male respondents in sexual misconduct cases at Coastal are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof.

98.    As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE SECOND CAUSE OF ACTION**
**(Violations of Title IX OCR Rules)**

99.    John Doe repeats and realleges each and every allegation hereinabove as if fully set forth herein.

100.    The United States Department of Education Office for Civil Rights ("OCR") requires colleges that receive federal funds to adhere to Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex.

101.    OCR requires colleges to ensure that employees "likely to witness or receive reports of sexual harassment and violence" receive training on practical information about how to identify, report and investigate sexual misconduct.

102.    OCR requires colleges to process complaints of sexual misconduct in accordance with its established procedures.

103.    OCR requires colleges to engage in the "prompt, thorough, and impartial" investigation of an allegation of sexual misconduct.

104.    OCR requires colleges to designate a Title IX coordinator to oversee all Title IX complaints and identify and address any patterns or systemic problems that arise during the review of such complaints.

105.    OCR requires colleges to ensure that their Title IX coordinators have adequate training on what constitutes sexual harassment, including sexual violence, and that they understand how the [college's] grievance procedures operate.

106.    OCR requires colleges to utilize adequate, reliable, and impartial investigation of complaints, including an equal opportunity for both parties to present relevant witnesses and other evidence.

107.    OCR requires colleges to afford to the complainant and the accused student similar and timely access to any information that will be used at the hearing.

108.    OCR requires colleges to maintain documentation of all proceedings, which includes written findings of facts, transcripts or audio recordings.

109.    OCR requires colleges to ensure that all employees are trained with respect to applicable confidentiality requirements.

110.    OCR requires that all colleges must provide due process to the alleged perpetrator.

111.    Based on the foregoing, Coastal has deprived John Doe, on the basis of his sex, of his rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of Coastal's guidelines and regulations.

112.    Coastal failed and/or refused to follow its own policies and procedures for John Doe as the male accused of sexual assault when it found John Doe not responsible for sexual assault, even in the face of its outright failure and refusal to interview additional witnesses in support of John Doe's defense and failure to present any evidence in support of the claim that Jane Doe allegedly engaged in non-consensual sex with John Doe, except for Jane Doe's say-so.

113.    Coastal failed and/or refused to adhere to its own policies and procedures when it failed to follow up on John Doe's concerns about Jane Doe's credibility and the credibility of her complaint about the evening in question.

114.    Coastal has created an environment where an accused male student is fundamentally denied due process by being prosecuted through the conduct process under a presumption of guilt. Such a one-sided process deprived John Doe, as a male student, of educational opportunities at Coastal on the basis of his sex.

115.    And then, it unlawfully held a "rehearing" of the same allegation. The Student Conduct Handbook provides for an appeal ONLY when new evidence exists not presented at the first hearing no new evidence existed and the grounds for allowing an appeal did not exist.

116.    Coastal's stated policies and procedures, together with its violations of them thereof only with respect to John Doe as the male accused of sexual assault, demonstrates Coastal's gender-biased practices with respect to males accused of sexual assault at Coastal.

117.    As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE THIRD CAUSE OF ACTION
### (Breach of Contract)

118.    John Doe repeats and realleges each and every allegation hereinabove as if fully set forth herein.

119.    Based on the aforementioned facts and circumstances, Coastal breached express and/or implied agreement(s) with John Doe.

120.    Coastal committed several breaches of its agreements with John Doe, including, without limitation its Code of Student Conduct.

121.    The Code of Student Conduct requires, without exception, student participation in the student conduct process and a fair and equal process for both the accuser and the accused.

122.    Coastal's Student Conduct Handbook and/or its sexual harassment policy include) and procedures, including alleged sexual misconduct, among other things:

> The University does not discriminate on the basis of race, color, national origin, sex age, disability, creed, religion, sexual orientation, or veteran status in admission and access to, and treatment and employment in, its educational programs and activities.

123.    Based on the foregoing, Coastal conducted its investigation of Jane Doe's allegation in a manner that was biased against the male being accused. Based on Coastal investigators' questions and treatment of John Doe, the investigation was slanted in favor of Jane Doe and took her statements at face-value, while mischaracterizing John Doe's statements and those of several witnesses. Coastal engaged in gender discrimination against John Doe.

124.    Coastal's Investigator was dismissive of relevant evidence between John Doe and Jane Doe. Coastal's decision to exclude exculpatory evidence from its investigation foreclosed John Doe from the opportunity to adequately defend the allegation against him and provided a

slanted view of the facts in favor of the complainant.  Still, there was a favorable decision from the initial Student Conduct Hearing.

125.     Pursuant to Coastal's sexual misconduct policies and procedures, any Investigator or Student Conduct Board in charge of determining responsibility for charges of sexual misconduct shall have received appropriate training, which upon information and belief was nonexistent and/or inadequate.

126.     As a direct, reasonable and foreseeable consequence of the Coastal's breaches of its Code of Student Conduct and related policies and procedures, John Doe sustained tremendous damages, including, without limitation, emotional distress, economic injuries, the inability to complete his studies at Coastal, expending tuition and expenses at a comparable university and other direct and consequential damages.

127.     As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

128.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

129.     Based on the aforementioned facts and circumstances, Coastal acted in bad faith when it considered an appeal, granted a rehearing based on the appeal and on rehearing meted out a disproportionate sanction of expulsion notwithstanding the flawed investigative process, the favorable decision by the original Student Conduct Board and lack of evidence in support of Jane Doe's claims of sexual misconduct.

130.    Based on the aforementioned facts and circumstances, Defendant Coastal breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Plaintiff.

131.    As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

132.    Plaintiff is entitled to recover damages for Coastal's breach of the express and/or implied contractual obligations described above.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Promissory Estoppel)

133.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

134.    Defendant Coastal's various policies constitute representations and promises that Coastal should have reasonably expected to induce action or forbearance by Plaintiff.

135.    Defendant Coastal expected or should have expected Plaintiff to accept its offer of admission, incur tuition and fees expenses, accept its varsity football walk-on opportunity and choose not to attend other colleges based on its express and implied promises that Coastal would not tolerate, and Plaintiff would not suffer, discrimination or harassment by a fellow student or faculty members and would not deny Plaintiff his procedural rights should he be accused of a violation of Coastal's policies.

136.    Plaintiff relied to his detriment on these express and implied promises and representations made by Coastal, by choosing to attend Coastal rather than other schools of equal caliber and paying the required tuition and fees.

137.    These express and implied promises and representations made by Coastal must be enforced to prevent substantial injustice to Plaintiff.

138.    Based on the foregoing, Defendant Coastal is liable to Plaintiff based on Promissory Estoppel.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Negligence)

139.    Plaintiff repeats and realleges each and every allegation hereinabove, as if fully set forth herein.

140.    Defendant Coastal owed duties of care to Plaintiff, arising from the obligations delineated in its, Code of Student Conduct and directives issued by the U.S. Department of Education's Office of Civil Rights. Such duties included, without limitation, a duty of reasonable care to allow Plaintiff an equal opportunity to present information and witnesses in support of his defense; a duty of care to conduct an impartial and thorough investigation of the allegation of sexual misconduct against him; and a duty of care to utilize the preponderance of the evidence standard in reaching a determination.

141.    Based on the foregoing, Coastal breached its duties owed to Plaintiff.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Declaratory Judgment)

142.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

143.    Coastal University has committed numerous violations of the Parties' contracts and of federal and state law.

144.    Plaintiff's future educational, athletic and career prospects have been severely damaged. Without appropriate redress, the unfair outcome will continue to cause irreversible damages to Plaintiff's future educational and employment prospects, with no end in sight.

145.    As a result of the foregoing, there exists a justiciable controversy between the Parties with respect to the outcome, permanency, and future handling of Plaintiff's formal student record at Coastal.

146.    By reason of the foregoing, Plaintiff requests, pursuant to 28 U.S.C. § 2201, a declaration that:

> (i) the outcome and findings made by Coastal be reversed;
>
> (ii) Plaintiff's reputation be restored;
>
> (iii) Plaintiff's disciplinary record be expunged;
>
> (iv) the record of Plaintiff's expulsion from Coastal be removed from his education file;
>
> (v) any record of the complaint against Plaintiff be permanently destroyed;
>
> (vi) Plaintiff be readmitted to Coastal for the Spring 2018 semester, for attendance at his option;
>
> (vii) Plaintiff be allowed to withdraw from courses in which he may have failed, following and as a result of the unlawful, arbitrary and capricious unfavorable decision of the second Student Conduct Board; and that
>
> (viii) Coastal's rules, regulations and guidelines are unconstitutional as applied.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

> (i) on the First Cause of Action for violation of Title IX of the Education Amendments of 1972 and the Second Cause of Action for violation of OCR Rules, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses,

loss of educational, athletic and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)  on the Third Cause of Action for breach of contract, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv) on the Fourth Cause of Action for breach of the covenant of good faith and fair dealing, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(v) on the Fifth Cause of Action for promissory estoppel, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vi) on the Sixth Cause of Action for Negligence, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational, athletic and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and

(vii) awarding Plaintiff such other and further relief as the Court deems just, equitable and proper, to include but not limited to punitive damages if allowed.


Respectfully submitted,

/s/ Clarence Davis
Clarence Davis (Fed. I.D. #0433)
GRIFFIN DAVIS LLC
Post Office Box 999
Columbia, SC 29202
(803) 744-0800
(803) 744-0805 facsimile
cdavis@griffindavislaw.com

January 31, 2018