IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| John Doe,<br><br>                              Plaintiff,<br><br>            vs.<br><br>Coastal Carolina University,<br><br>                              Defendant. | C.A. No. 4:18-cv-00268-RBH<br><br><br>**RESPONSE TO MOTION TO DISMISS**<br>**PURSUANT TO Rule 12(b)(6)** |

### [i]ARGUMENT

This is a case of first impression[1] under Title IX involving conduct which can plausibly be inferred as being anti-male through Coastal Carolina University ("Coastal") officials seeking to flagrantly and intentionally ignore written procedural rules governing appeal, combined with other pre and post appeal procedural misconduct, in order to ***thwart and unlawfully overturn*** a Student Conduct Board's ***unanimous decision*** that John Doe, a Black male athlete, ***did not rape*** a Caucasian female student cheerleader.  Based on this seemingly one of a kind circumstance, it would be premature to dismiss this Title IX action when the direct proof to support any plausible legal theory and inferences—through written, oral communications and related testimony—is within the sole dominion of  Coastal.

### STANDARD OF REVIEW FOR MOTION TO DISMISS

Federal Rules of Civil Procedure, Rule 12(b) (6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b) (6).

---

[1] The majority of cases instituted throughout the country under Title IX primarily involve a male student seeking to overcome the findings of a single Student Conduct Board hearing.  In this instance, we have two Student Conduct Board hearings at issue, with the first one finding in favor of the plaintiff and the second one finding against him. Based on all the cases reviewed to date, none resemble these circumstances of two hearings having been conducted, nor do any of the cases involve an alleged abuse and violation of written rules governing an appeal by the accuser.

To withstand a motion to dismiss, the complaint at issue must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Rule 8(a)).

This complaint must include sufficient facts to state a claim that is ***plausible on its face*** and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted). The complaint "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. 1955.[2] In examining the sufficiency of a complaint, respectfully this Court must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. 1937; *DiGeronimo Aggregates*, 763 F.3d at 509. This Court may consider exhibits attached to the complaint without converting a dismissal motion to a summary judgment motion. *Rondigo, L.L.C. v. Twp. Of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011). This Court can also make a determination

---

[2] The complaint in this action is laced throughout with detailed factual allegations, providing both direct proof and proof by inference. Regrettably based on the assertions in the Motion to Dismiss and later in this response, these factual allegations will be argued in detail to demonstrate a plausible legal theory and to establish the inferences of male gender bias which a reasonable trier of fact can consider in proving this Title IX action. There will be assertions by inference which may be considered scurrilous; however, the Motion to Dismiss assertions leave no choice but to demonstrate that the complaint allegations are more than sufficient to provide a plausible theory of recovery which can by inference establish anti-male bias under the circumstances of this case.

that because of the unique circumstance of this case being of first impression, a Rule 12(b) (6) motion is premature, because Coastal has records, including emails, notes, witness testimony, etc., within its sole dominion and control which can contain direct proof of specific factual allegations supporting or further establishing anti-male bias and discovery has not commenced.  See *Doe v. Columbia University,* 831 F.3d 46 (2nd Cir. 2016); Doe v. Salisbury University, 123 F. Supp. 3d, 748 (D. Md. 2015)

<u>STANDARD OF REVIEW FOR ERRONEOUS OUTCOME CASE</u>

Primarily, this is an erroneous outcome case; however, in a typical erroneous outcome case, it involves a single Student Conduct Board or the equivalent hearing, and the plaintiff "attack[s the single] university disciplinary proceeding on grounds of **gender bias**", arguing that the plaintiff "was innocent and wrongly found to have committed an offense."  *Yusuf*, 35 F.3d 709, 715 (2nd Cir. 1994).    It requires the plaintiff to show the outcome of a University's student conduct disciplinary proceeding was erroneous because of gender bias. To plead an erroneous outcome claim, the plaintiff must state "(1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized causal connection between the flawed outcome and gender bias." *Doe v. Cummins, 662 Fed. Appx. 437, 452* (66th Cir. 2016), citing *Yusuf, supra, 35 F.3d 709, 715.*  In this instance, Coastal seeks dismissal of this lawsuit on the grounds that plaintiff John Doe has not pleaded sufficient facts to support either prong.  The Court, drawing all reasonable inferences in favor of John Doe, should disagree. Because in the instant Complaint, the factual allegations have been pled in excruciating detail demonstrating to a reasonable fact finder plausible legal theories and inferences which support gender bias.

From the outset of this matter and prior to the original Student Conduct Board, it can be inferred that the person primarily responsible for the case against John Doe and also its

Investigator, specifically Dean of Students Overton, engaged in sexually inappropriate predatory conduct towards student John Doe.  It also plausible and can be inferred to a reasonable fact finder that Dean Overton was spurned by John Doe, thereby generating an anti-male gender bias towards John Doe.  **(Entry 1 ¶ 66).**

It can be inferred that Dean Overton engaged in sexually inappropriate predatory conduct towards John Doe based on evidence which will show the following:

      a.      From January 2016 through July 2016, Dean Overton would have weekly "mentoring" meetings with John Doe in his office.[3]

      b.      During the course of these so-called "mentoring" meetings and over the protests of both John Doe and his father, Dean Overton purchased a dress suit for John Doe for approximately $300.00 or more as a gift, followed by taking John Doe to dinner.

      c.      On or about July 1, 2006, John Doe was in an off-campus auto accident in the Myrtle Beach, South Carolina area, which was, upon information and belief, approximately more than 20 miles from Coastal's campus.   Dean Overton took primary/parental care of John Doe during his Emergency Room treatment, insisting John Doe's father was not needed and instead, he "…would handle everything…," including communication and coordination with treating physicians at the Grand Strand Regional Medical Center located in Myrtle Beach, South Carolina.   **(Entry 1 ¶ 65).**

It is plausible to a reasonable fact finder that these acts can be inferred to constitute unwanted sexual advances by Dean Overton and when spurned by John Doe, a collegiate football player at Coastal, generated animosity and an anti-male bias.  It is plausible to a reasonable fact finder and can be inferred that this animosity and anti-male bias against John Doe, a collegiate

---

[3] Discovery needs to be conducted as to whether Dean Overton had weekly "mentoring" meetings with any other student in his office and the purpose behind those meetings.

football player, became even stronger when John Doe's father confronted Dean Overton about it all.  **(Entry 1 ¶ 67).**  It is plausible to a reasonable fact finder that Dean Overton evidenced an anti-male bias after this confrontation, when he never brought this conduct or the father's concern to the attention of neither the Coastal Legal Department nor other Coastal officials.  And if Dean Overton did so, then it can be inferred that either the Coastal Legal Department or other Coastal officials ignored the bias created by this potential faculty-student predatory conduct and confrontation.  **(Entry 1 ¶ 68).**

It is plausible to a reasonable fact finder and can be inferred that the following further evidences an anti-male bias resulting from being spurned by John Doe and confronted by the father for inappropriate predatory conduct:

a.    When questioning John Doe during the investigative process, Dean Overton's line of questioning was not impartial but hostile in nature, more akin to cross-examination in tenor to illicit a confession, rather than an objective attempt to factually reconstruct an event; (**(Entry 1 ¶ 69).**

b.    When Dean Overton refused to interview the Cheerleading Coach to determine if any truth to accusations she may have coerced, convinced or persuaded Jane Doe to wrongly accuse John Doe of engaging in nonconsensual sex.  This is despite members of the squad who knew Jane Doe well and seriously questioned her character for veracity and were aware of the prior intimate casual sexual relationship between Jane Doe and John Doe.  Accusations were that if any of the cheerleading squad came forward with this type or other information which could exonerate John Doe, then it could result in dismissal from the cheerleading squad; **(Entry 1 ¶ 69).**

c.    When Dean Overton would mischaracterize the interview statements of several witnesses over their protest to him; **(Entry 1 ¶ 69).**

d.    When Dean Overton refused to interview several potential witnesses present at the off campus pool party who could provide evidence in exoneration of John Doe based on observing Jane Doe's interactions with John Doe and could provide corroborating evidence of subjective and objective consent.  Several of these witness also had information regarding Jane Doe's reputation for promiscuity.  Despite having approximately one hundred days to conduct the investigation and after being spurned by John Doe and confronted by the father, Dean Overton either refused to or did not interview these witnesses, with the effect of receiving Jane Doe's false allegation of rape at face value; **(Entry 1 ¶ 69).**

e.    When Dean Overton discouraged witnesses favoring John Doe from attending the first Student Conduct Board Hearing, who could either vouch for John Doe's character or provide testimony that Jane Doe seriously lacked a character for veracity or could provide other evidence inconsistent with her having been sexually assaulted by John Doe; **(Entry 1 ¶ 69).**

f.    Several of the above referenced witnesses testified at the first Student Conduct Hearing.  Following the granting of the appeal of Jane Doe for a rehearing of the Student Conduct Board, these witnesses should have also been subsequently interviewed by the Dean Overton and invited to the testify at the rehearing held on March 31, 2017. **(Entry 1 ¶ 69).**  It is plausible to a reasonable fact finder and can be inferred that Dean Overton did not do so because of a continuing animosity and resulting anti-male bias against John Doe, a collegiate football player who spurned his advances, particularly since

John Doe initially overcame the bias of Dean Overton at the first Student Conduct Board hearing.

h.     It is plausible to a reasonable fact finder and can be inferred (after some discovery being conducted) that Dean Overton was involved in the scheduling of the rehearing and knew these witnesses were unavailable at rehearing because of a mandatory varsity football trip at the same time when the rehearing was scheduled and conducted. **(Entry 1 ¶ 70)**

i.     And (after some discovery) plausible to a reasonable fact finder and can be inferred that Dean Overton's anti-male bias after being spurned by John Doe and confronted by his father, played a major part in a refusal by Coastal to not to make scheduling accommodations for John Doe's undersigned new attorney by granting a continuance of the rehearing.  To have done so would have allowed the attendance of credibility and character witnesses against Jane Doe. **(Entry 1 ¶ 72).**

It is not a farfetched notion, but plausible to a reasonable fact finder that Dean Overton, who reports directly to and likely has daily access to Coastal's Provost and Executive Vice President engaged in conduct to influence the decision to accept Jane Doe's untimely appeal. Further, it is not a farfetched notion, but plausible to a reasonable fact finder that Dean Overton, who attended the first Student Conduct Board, engaged in conduct to influence Mr. Byington's decision to grant a rehearing, all because of an anti-male bias.[4]

For, it can also be plausible to a reasonable fact finder and inferred that Dean Overton, after being spurned by John Doe and confronted by his father, the demonstrated a pro-female bias towards the accuser through the following conduct:

---

[4] Document and deposition discovery needs to be conducted on this issue, with the direct proof of these inferences within the sole dominion and control of Coastal.

a. Both Jane Doe and John Doe received an Investigation Notice, agreeing that, "Strict confidentiality of this investigation and content of our communication is expected. … If a breach of confidentiality comes to your attention …please inform our office immediately." Jane Doe took a photograph of confidential statements from witnesses with her cell phone during a meeting with Dean Overton the Investigator, showing them to several students around Coastal's campus….this was reported to the Dean of Students Office headed by Dean Overton, but no disciplinary action was taken against Jane Doe.  **(Entry 1 ¶ 73).**

b.      The Investigation Notice also stated that, "Retaliation against anyone involved in the investigation is strictly prohibited…. (id.) Following the granting of the appeal Jane Doe contacted New Spring Church of Anderson, South Carolina by telephone, informing it that John Doe had been involved in a sexual assault….This was reported to the Dean of Students Office headed by Dean Overton, but no disciplinary action was taken against Jane Doe. **(Entry 1 ¶ 73).**

c.      Coastal allowed Jane Doe to escape scrutiny and punishment for admitted underage drinking during the evening in question, in violation of its policies **(Entry 1 ¶ 74)**, a decision of which can be inferred to have been made by Dean Overton**.**

It is plausible that if a reasonable fact finder considered all of the above evidence collectively or some even individually that it would find that the accuser's appeal being submitted late and accepted, particularly if influenced by Dean Overton or Provost and Executive Vice President Mr. Byington alone, that the only reason was because of an anti-male bias to undo a Student Conduct Board Hearing favoring John Doe.  The deadline to submit a written appeal had been Friday, December 9, 2016. **(Entry 1 ¶ 22).**  Jane Doe did not submit a written appeal of the first Student Conduct Board's decision until December 15, 2016.  She missed the filing deadline for an appeal by seven business days.  A reasonable fact finder can conclude directly or by

inference that the appeal should have been summarily rejected because Jane Doe missed the appeal deadline **(Entry 1 ¶ 23).** It is plausible that a reasonable fact finder can infer that it is only because of an anti-male bias, particularly with Dean Overton being involved, that the appeal was accepted for consideration even though defective on its face. **(Entry 1 ¶ 24).** Because, Jane Doe was required to specifically state the error(s) which took place at the Student Conduct Board hearing. **(Entry 1 ¶ 25).** The appeal does not identify any specific (or general) procedural or evidentiary error(s) that occurred during the hearing or in deliberations…..the appeal identified no new or additional evidence that should have or could have been considered by the Student Conduct Board. **(Entry 1 ¶ 26).**

Coastal's Provost and Executive Vice President Byington acknowledged reviewing in detail the entire Student Conduct Board record of December 6, 2016, but cites no procedural or evidentiary error of any kind to justify considering or granting the appeal. It is plausible to a reasonable fact finder and can be inferred that he wanted to undo the prior unanimous finding that a male, a collegiate football player, had prevailed on an accusation of rape by a cheerleader. It is plausible to a reasonable fact finder that this is also evidence of an anti-male gender bias.

For, there is not a single iota of new information identified in existence or available which would or could have altered the December 6, 2016 Student Conduct Board decision. **(Entry 1 ¶ 28).** Yet, Mr. Byington ordered a second Student Board of Conduct and it is plausible to a reasonable fact finder and can be inferred from all the above facts and circumstances that he simply did not like the decision of the original December 6, 2016 Student Conduct Board finding in unanimous favor of a male collegiate football player, John Doe, that he did not engage in non-consensual sexual intercourse with Jane Doe. **(Entry 1 ¶ 29).** If so, it is plausible to a reasonable fact finder and can be inferred that in Mr. Byington ordering a rehearing panel to the exclusion of

9

two Coastal students and including only a Chairperson and three faculty members **(Entry 1 ¶ 31),** Coastal's chances of a decision favoring the female accuser increased, thereby constituting an anti-male bias.

All of the records to support these inferences, however, are within the dominion and control of Coastal.  Meaning discovery is needed, which would include records in the form of emails, internal memos and witness testimony surrounding any meetings held in discussion of any appeal decision by Mr. Byington and any influence on the decision asserted by Dean Overton.

As in *Doe v. Columbia University*, *supra*, the Second Circuit held that the plaintiff pled facts and allegations which supported at least a minimal inference of sexual bias on the part of the university and as such the  motion to dismiss based on the pleadings alone should have been denied by the district court.  In John Doe's complaint and as shown in this response, more than a minimal inference of sexual bias has been pled.  Further the 2nd Circuit queried how an aggrieved student was supposed to plead facts which show gender bias sufficient to survive a motion to dismiss, just as here, if the defendant has all the records and there has been no discovery undertaken in the matter.

This case is also akin to *Doe v. Salisbury University, supra*, when the plaintiff instituted an action against university officials and the female accuser for civil conspiracy, intentional infliction of emotional distress, defamation, negligence and for violation of Title IX.  The Maryland federal district court denied the university's motion to dismiss he negligence and Title IX claims in part because of a failure, just as in this case, to adhere to university policies and procedures and that the outcome of the university's investigation may be erroneous and motivated by gender bias.  In that case, Plaintiff's alleged numerous procedural defects by the university supported an erroneous

outcome claim, as well as showing that evidence, which could contain specific factual allegations was within the dominion and control of the defendant.

## STATE LAW CLAIMS

As the Court is aware, it has discretion over exercising jurisdiction over state-law claims, even against Coastal, a state owned institution. This is pursuant to Title 28, United States Code, Section 1367, when the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. Section 1367.  This determination is premature and need be addressed only after a decision on whether a Title IX claim can be maintained.

## CONCLUSION

Based on the foregoing, plaintiff John Doe in his complaint has more than sufficiently pled facts supporting the denial of a motion to dismiss and should be allowed to move forward into discovery on his Title IX erroneous outcome and related claims.

Respectfully submitted,

/s/ Clarence Davis
Clarence Davis (Fed. I.D. #0433)
GRIFFIN DAVIS LLC
Post Office Box 999
Columbia, SC 29202
(803) 744-0800
(803) 744-0805 facsimile
cdavis@griffindavislaw.com

May 21, 2018

_____